McLUCAS v. DURHAM.

A partnership was dissolved by written agreement, one of the partners, M., taking all the assets and assuming to pay all the debts.  At the time, there appeared upon the books certain deposits to the credit of one E., and also

an indebtedness by E., the balance in his favor being $700, and such balance was understood by the three partners to be the real indebtedness of the firm to E. But these deposits by E. having been of trust funds, judgment was recovered against the three partners for the full amount thereof, with interest. In action by M. against the other partners for contribution, E. being insolvent, *held*, that M. was liable for $700 of this judgment, and the three partners jointly for the balance. Mr. Justice McGowan, dissenting.

Before Kershaw, J., Marion, June, 1882.

This case is stated in the Circuit decree as follows:

This case was heard upon the testimony taken by the referee and the arguments of counsel. The following is a statement of the facts as I find them to be:

On September 1st, 1868, Solon A. Durham, William Evans and the plaintiff, John D. McLucas, entered into a copartnership for the transaction of mercantile business in the town of Marion, in the said State, under the name of S. A. Durham & Co. At several dates during the year 1869, while the copartnership continued, one Asa L. Evans deposited with the said firm the sums of money specified in the complaint, to wit: April 26th, $450; and June 22d, $1,076.51, and received therefor certificates of deposits from the firm, in the firm name, written by the plaintiff and signed by the defendant, S. A. Durham, acknowledging the deposit in each case and stating that the same should bear interest at the rate of seven per cent. per annum and be subject to the draft of the said A. L. Evans at three days' notice. At the time of these deposits the rate of interest prevailing for the loan of money was something like twenty per cent. On March 11th, 1872, the said Asa L. Evans let the firm have the further sum of $1,000, for which he received the note of the firm payable July 1st, after date, to the order of said A. L. Evans, at Marion Court House, with interest from date at one per cent. per month.

During the existence of the copartnership, the plaintiff was the bookkeeper, and S. A. Durham and he were the managers of the business. William Evans took no part in conducting it.

On February 1st, 1873, the firm was dissolved, the plaintiff purchasing the interests therein of the other partners, assuming all the liabilities of the firm and receiving an assignment of all

the assets belonging to the same. This contract was by deed of indenture executed between the parties, a copy of which is attached to the answer of the defendant, Durham.

At various dates during the existence of the copartnership and up to the dissolution, Asa L. Evans and the firm of Evans & McRae, of which he was a member, drew money and bought goods on a credit, of the said firm of S. A. Durham & Co., to a considerable amount; so that, at the time of the dissolution, it was estimated by the plaintiff that he owed the firm within $700 of the amount due on the said note and certificates of deposit, and a statement was made out for the purpose of informing William Evans of the condition of the business with a view to the purchase of his share by the plaintiff, and the aforesaid contract of dissolution showing that the liability of the firm to said A. L. Evans was only $700.

The money deposited with the firm by A. L. Evans belonged to the estate of one Samuel F. Gibson, of which A. L. Evans was the administrator, and this fact was known to the plaintiff at the time of the deposits. Asa L. Evans, in accounting with said estate, turned over the said note and certificates of deposit as assets of the same, and a judgment was obtained after the dissolution of the firm, against all the members thereof in an action brought upon those instruments by the then clerk of the court, suing for the benefit of said estate, under the direction of the court. To the said action the accounts and liabilities of the said Evans and Evans & McRae due to the said firm were pleaded as a discount or counter-claim.

The jury allowed the discount to the amount of the note and interest and found a verdict for the plaintiff to the amount of the said certificates of deposit and interest, and judgment was entered accordingly for the sum of $2,362.47. A. L. Evans was then insolvent and had been since 1873. After the dissolution of the firm, William Evans died, and the defendant, John G. Blue, administered on his estate. Plaintiff claims to be placed in the same position as if the entire discount set up against the claims of A. L. Evans had been allowed, which would entitle him to have the defendants contribute to the payment of the judgment equally with him. There was no distinct agreement between A.

L. Evans and the firm that his account and that of Evans & McRae should be allowed as a discount against the said deposits, but the plaintiff, and the defendant S. A. Durham, supposed and believed, at the time of the dissolution, that they would be so allowed as discounts, and the statement exhibited to William Evans was based upon that assumption, and he sold his interest upon that basis. They were all equally mistaken in this belief and there were no circumstances of fraud, misrepresentation, concealment or deception upon either part.

Upon these facts I conclude as matter of law that the plaintiff is not entitled to the relief demanded. I add here my reasons for these findings and conclusions, so far as I deem necessary. One of the grounds upon which the plaintiff claims relief is the want of notice of the trust affecting the money deposited; that S. A. Durham had notice and did not communicate the same to him; that it was Durham's duty to inform him and his failure to do so led to his assumption of a liability in his contract of dissolution far in excess of that he supposed he did. If there had been such concealment, plaintiff's case would have been very strong against Durham. I have been constrained to find that plaintiff had notice of the trust. He seeks to avoid the effect of his contract of dissolution and purchase on the ground of mistake superinduced by the concealment of a fact by one of the co-partners which it was the duty of the latter to communicate.

The affirmative and burden of proof is upon him. The testimony which he has produced to sustain this allegation of want of notice is overcome, or at least neutralized, by the testimony of A. L. Evans and S. A. Durham. A. L. Evans is disinterested and says in his testimony that he thinks the plaintiff was notified—"had no doubt of it." Durham, having no greater interest than plaintiff, testifies positively that plaintiff was informed that the money deposited belonged to the Gibson estate. Durham and plaintiff are equally credible and respectable witnesses. I am, therefore, compelled to find against the plaintiff on the ground of notice. There were some circumstances tending to corroborate the one and the other of them, but not enough to cast the beam on the side of the plaintiff.

U

The question of law presented is, whether upon the facts found the mutual mistake of the parties is of such a character as to entitle the plaintiff to relief. It cannot be said to have been a mistake as to any fact existing at the time of the contract of dissolution. It was rather an erroneous opinion as to what would be the result of the transactions between the firm and A. L. Evans. It was a mistaken estimate as to the profits or advantages to accrue to the plaintiff, from the purchase shared in good faith by all the parties. They might all have believed that they had a valid discount to the amount claimed, which could be maintained in law, notwithstanding their notice of the trust. If so, it was a mistake as to the legal effect of the transactions.

The general rule (as is well known) is that mistakes of law furnish no ground for relief in equity, since all are presumed to know the law. 1 *Story Eq.*, § 137. And the exceptions are said to be few in number and to have something peculiar in their character. *Hunt* v. *Rousmaniere*, 1 *Pet.* 15; *Bank of United States* v. *Daniel*, 12 *Pet.* 32. In this State it has been supposed that there has been a departure from the rule, and that courts of equity will relieve against clear mistakes of law. *Lowndes* v. *Chisolm*, 2 *McCord Ch.* 455, has been cited at bar to establish this. But there Judge Colcock, who delivered the opinion, appears not to have gone further than to say that there are cases of mistakes in law in which the courts will grant relief, but he admits the general rule to be otherwise. He seems to rest that case upon the doubtful condition of law of mortgages after the acts of 1791 and 1797.

In the latter case of *Keitt* v. *Andrews*, 4 *Rich. Eq.* 349, the executor and the legatees had agreed upon the settlement of an estate, and had actually settled upon the basis of an erroneous construction of a will. The error was mutual, and there was no circumstance of fraud, management or undue influence. The court refused to relieve against the settlement. Like this case, the error there was rather an error of opinion as to the legal effect of the transactions than a mistake either of fact or law. It seems to me that the plaintiff could with as much reason claim relief if any assets of the firm, estimated to be good at the time

of the dissolution, had since been ascertained to have been bad at that time, as demand it in this case. It is a case of hardship, but it will not do to make the defendants share it under the circumstances.

It is, therefore, adjudged that the complaint be dismissed, and that the plaintiff pay the costs herein, to be adjusted by the clerk and inserted in the judgment, and that the defendants have execution therefor.

This case came to this court upon the following exceptions: Because his Honor erred in holding: " 1. That there was no distinct agreement between A. L. Evans and S. A. Durham & Co., that his accounts and the accounts of Evans & McRae should be allowed as discounts against the certificates of deposit and the note. 2. That the plaintiff had notice that the money received by S. A. Durham & Co. from A. L. Evans, for which the certificates of deposit and note were given, belonged to the estate of S. F. Gibson. 3. That the defendant S. A. Durham was not chargeable with a failure to communicate his knowledge of the trust attaching to the money received from A. L. Evans to the plaintiff, his copartner. 4. That there was no 'mistake as to any fact existing at the time of the contract of dissolution,' when it is admitted on all hands, that no liability to the estate of S. F. Gibson was embraced in the statement upon which the contract was based, nor contemplated by any of the parties to the contract. 5. That the mistake in this case is not of such a character as to warrant the court in relieving the plaintiff from the hardship it entails. 6. Because his Honor erred in not holding that the plaintiff and the defendants should contribute equally to the satisfaction of the judgment in favor of the estate of S. F. Gibson against the members of the late firm of S. A. Durham & Co."

*Mr. C. A. Woods,* for appellant.

*Mr. W. W. Harllee,* contra.

February 28th, 1884. The opinion of the court was delivered by

Mr. Justice McIver. On February 1st, 1873, John D. McLucas, S. A. Durham and William Evans entered into a written agreement for the dissolution of a mercantile copartnership under the name of S. A. Durham & Co., which had existed since September 1st, 1868, a copy of which is set out in the "Case." One of the terms of said agreement was expressed in the following words: "The said J. D. McLucas further assumes all the liabilities incurred by the said firm of S. A. Durham & Co. since September 1st, 1868, and hereby obligates himself to pay and discharge said debts and liabilities out of the proceeds of the choses in action of the said firm, hereinafter transferred to him, and to use all due and proper diligence to raise money by means of said choses in action, and to apply it promptly, when collected, to the payment of said debts of said firm herein assumed by said McLucas."

One of the liabilities of the said firm, as it appeared on their books, was a balance due to A. L. Evans, amounting to $700, which arose in this way: the said A. L. Evans, at different times, deposited with the said firm of Durham & Co. considerable sums of money, which were credited to him individually on the books of said firm, and contracted large accounts upon the faith of such deposits; and the balance above mentioned was the difference between the amount of such deposits and the amount of the accounts due by him. There can be no doubt that when the agreement for dissolution was entered into, all the parties based their action upon the condition of the firm as shown by the books, and by a balance-sheet taken from the books and shown to William Evans, who does not seem to have been an active partner, and was not so familiar with the condition of the business of the firm, or with the books of the concern, as the other two partners, who had had the principal management of the business.

It turned out that the money deposited with the firm of Durham & Co. by A. L. Evans was not his own money, but belonged to the estate of Gibson, of which he was the administrator, though the money was deposited to his individual credit and not in his representative character, and there was nothing whatever on the books of Durham & Co. to indicate that such money belonged to

the Gibson estate, or that the firm was in any way indebted to said estate. Some time after the agreement for dissolution was entered into, A. L. Evans was required to turn over to the clerk of the court the certificates of deposit as part of the assets of the estate of Gibson, and an action was brought by him against S. A. Durham & Co. to recover the amount of such deposits, in which they attempted, unsuccessfully, to set up as a discount the amount of their claims against A. L. Evans; and judgment was recovered against said Durham & Co. for the sum of $2,362.47, the amount of said certificates of deposit with interest. The object of this action is to require the defendants to contribute their ratable proportion to the payment of said judgment, upon the ground that the liability thus judicially ascertained against S. A. Durham & Co. was not one of the liabilities which the plaintiff had assumed to pay under the agreement of dissolution.

The Circuit judge found as matter of fact that the plaintiff, as well as the defendant Durham, did have notice of the trust character of the money deposited with the firm by A. L. Evans; that, though there was no distinct agreement between A. L. Evans and the firm that his accounts should be allowed as discounts against the said deposits, yet "the plaintiff and the defendant S. A. Durham supposed and believed at the time of the dissolution that they would be so allowed as discounts, and the statement exhibited to William Evans was based upon that assumption, and he sold his interest upon that basis. They were all equally mistaken in this belief, and there were no circumstances of fraud, misrepresentation, concealment or deception upon either part." And as matter of law he found that the plaintiff was not entitled to the relief demanded, and he therefore rendered judgment dismissing the complaint.

Accepting as correct the conclusions of fact reached by the Circuit judge, (inasmuch as there was a conflict of testimony, and it cannot be said that such conclusions are without any evidence to support them, or are manifestly against the weight of the testimony,) the only question remaining for us to decide is, whether, upon the facts so found, the plaintiff, as matter of law, is entitled to relief. It is clear, from the facts as found, that the parties never intended that the plaintiff should assume the payment of

any debt to the estate of Gibson, for none of them knew of any such indebtedness at the time of the dissolution. It is equally clear that they all assumed that the amount of the indebtedness of the firm to A. L. Evans was only $700. The books showed no indebtedness whatever to the estate of Gibson, and only showed a balance of $700 due to A. L. Evans. It is manifest, therefore, that if the Circuit decree stands, the plaintiff will be required to pay some $1,600 more than he understood he was assuming to pay, and that much more than the other parties understood that he was assuming to pay. How, then, can it be said that the minds of the contracting parties ever meet upon such a result? And this is an essential ingredient in every contract.

It is true that the terms of the written agreement, by which the plaintiff assumed the payment of the debts of S. A. Durham & Co., are very comprehensive. "All the liabilities incurred by the said firm of S. A. Durham & Co. since September 1st, 1868." And if it stood alone, might be sufficient to embrace any debt, whether known or unknown, of the said firm. But the testimony leaves no doubt of the fact that such agreement was based upon the condition of the firm as shown by the books, or by the balance-sheet taken from the books. The plaintiff, in his testimony, says : "My assumption of the liabilities of the firm was based upon the statement [the balance-sheet] referred to above." Durham says : "Had a general idea of the books, my capital in the concern, and my liability to the firm ; upon this I based my offer to McLucas." Certainly the balance-sheet was exhibited to William Evans before the agreement for dissolution was entered into, as he, not being an active partner, had no other means of ascertaining the condition of the concern ; and such is the testimony. There is as little doubt that all parties understood, at the time the agreement was entered into, that the accounts of Evans were to be discounted against the amount of his deposits. This the Circuit judge has found as a fact; and that William Evans sold his interest with that understanding.

These facts being established " by proofs entirely satisfactory;" equity will reform the written contract so as to make it conform to the precise intent of the parties. As is said in 1 *Story Eq. Jur.*, § 152, " Sometimes, by mistake, the written agreement con-

tains less than the parties intended; sometimes it contains more; and sometimes it simply varies from their intent by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract so as to make it conformable to the precise intent of the parties." Applying this doctrine to the case in hand, the agreement for dissolution should be regarded as binding the plaintiff to assume the payment of the debts of S. A. Durham & Co., as they appeared upon the books of that concern, or upon the balance-sheet taken from the books; and, inasmuch as no debt there appeared to be due the estate of Gibson, and only a balance of $700 due to A. L. Evans, the plaintiff cannot be held to have assumed any liability to the estate of Gibson, beyond the balance there appearing to be due to A. L. Evans, which, in reality, inures to the estate of Gibson.

The result, therefore, is that the judgment of the Circuit Court should be reversed, and that judgment should be rendered that the plaintiff pay the sum of $700 and interest on the judgment recovered by R. K. Clark as clerk of the Court of Common Pleas for the county of Marion against S. A. Durham, John G. Blue, as executor of the last will and testament of William Evans, deceased, and John D. McLucas, for the sum of $2,362.47, and that the plaintiff and the defendants herein are equally liable for the payment of the balance due on said judgment.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court with instructions to render judgment in accordance with the views herein announced.

Mr. Chief Justice Simpson, concurred.

Mr. Justice McGowan, *dissenting.* I have not been able to concur with my brethren in this case, and I think its importance requires that I should make a short statement of the grounds of my dissent. The facts are so fully and carefully stated in the Circuit decree, that it is not necessary to do more

than give in general terms the relations of the parties and the character of the issue.

Solan A. Durham, John D. McLucas and William Evans did a mercantile business at Marion under the name and style of "S. A. Durham & Co." Durham purchased the goods, made sales and was generally the active member, McLucas was the book-keeper, and Evans took no active part in conducting the business. During the year 1869, one Asa L. Evans, who was the administrator of the estate of one Gibson, and member of another mercantile firm known as " Evans & McRae," deposited with the firm of S. A. Durham & Co., money which he had in his hands belonging to the estate of Gibson, viz., on April 26th, $450, and on June 22d, $1,076.57, and received therefor certificates of deposit from the firm in his own name, which stated that the deposits should bear interest at the rate of seven per cent. per annum, and be subject to the draft of Asa L. Evans at three days' notice. This transaction was had with Durham, the active member, who certainly had notice that the money deposited belonged to the estate of Gibson, and he claimed that McLucas also had such notice, but this McLucas denied. On March 11th, 1872, the said Asa L. Evans let the firm have the further sum of $1,000, for which he took the note of the firm, bearing interest at the rate of one per cent. per month. During all this time Asa L. Evans individually and Evans & McRae were running up a considerable account with S. A. Durham & Co., less, however, than the aggregate amount of the aforesaid deposits and note by about the amount of $700, but no settlement was made, the charges on both sides remaining open on the books of the firm.

Matters were standing in this condition on February 1st, 1873, when the firm of S. A. Durham & Co. was dissolved, the plaintiff, McLucas, agreeing to purchase the interest of the other partners, assuming all the liabilities of the firm and receiving an assignment of all the assets belonging to the same. This contract of dissolution was by deed executed by all the parties. It is long, containing many stipulations and mutual agreements, and among others that " the said McLucas further

assumes all the liabilities incurred by the said firm of S. A. Durham & Co. since September 1st, 1868."

Afterwards, the said Asa L. Evans, being pressed by those interested in the Gibson estate of which he was administrator, transferred the aforesaid certificates of deposit and note to the clerk of the court in discharge of his liabilities as administrator, and action was brought on them against the members of the late firm of S. A. Durham & Co. To this action McLucas, who had assumed the liabilities of the concern, pleaded as a discount the accounts of Asa L. Evans and of Evans & McRae, alleging that Evans before the transfer had expressly agreed that the matter should be set off, one against the other. The counterclaim was allowed to the extent of the note and interest, but not as to the certificates of deposit, which were recovered and judgment rendered for the sum of $2,362.47, which according to the terms of the deed of dissolution is a liability of McLucas alone.

Asa L. Evans and Evans & McRae turned out to be insolvent, and the accounts of S. A. Durham & Co. against them, worthless, and the plaintiff, McLucas, brought this action against his late partners, Solon A. Durham, and John G. Blue as executor of William Evans (who had died in the meantime), alleging that he purchased their shares in the firm with the belief and upon the understanding of all the parties, that the accounts against Asa L. Evans and Evans & McRae would, upon settlement, be discounted against the certificates of deposit, leaving really due in that regard, only about $700, instead of the large amount recovered as above stated, and praying that the defendants should be ordered, notwithstanding the terms of the deed of dissolution, " to satisfy said judgment and for such other relief as the court might think just," &c. The defendants insisted upon the terms of dissolution, alleged that McLucas knew as much of the condition of the business as they did, and that the contract was fair, without fraud, misrepresentation, concealment or deception of any kind.

It was referred to the master to state the facts, and the testimony is all printed in the brief. Judge Kershaw dismissed the complaint, saying that " There was no distinct agreement between A. L. Evans and the firm that his account and that of Evans &

McRae should be allowed as a discount against the said deposits, but the plaintiff and the defendant S. A. Durham supposed and believed, at the time of the dissolution, that they would be so allowed as discounts, and the statement exhibited to William Evans was based upon that assumption and he sold his interest upon that basis. They were all equally mistaken in this belief, and there were no circumstances of fraud, misrepresentation, concealment or deception upon either part. Upon these facts I conclude as matter of law that the plaintiff is not entitled to the relief demanded. * * * One of the grounds upon which the plaintiff claims relief is the want of notice of the trust affecting the money deposited; that S. A. Durham had notice and did not communicate the same to him; that it was Durham's duty to inform him, and his failure to do so led to his assumption of a liability in his contract of dissolution far in excess of that he supposed he did. If there had been such concealment, plaintiff's case would have been very strong against Durham. I have been constrained to find that plaintiff had notice of the trust," &c.

From this decree the plaintiff appeals to this court upon various grounds. The first four exceptions complain of error on the part of the Circuit judge in his findings of fact: First, that McLucas, the plaintiff, had notice that the money for which the certificates of deposit were given, belonged to the estate of Gibson; and, second, that there was no express agreement with Asa L. Evans that his account and that of Evans & McRae should be set off against the deposits. In a " chancery case " it is the duty of the Circuit judge to decide the facts, and when, after weighing the testimony, he has done so, this court, for obvious reasons, is disinclined to disturb his conclusions. It is possible that in the exercise of his judgment the Circuit judge may err, but the same thing may be said also of this court, and indeed of all human tribunals; but it concerns the interest of the community that there should be an end of litigation, and it has been found wise, upon the whole, to take as conclusive the honest judgment of the tribunal appointed to make the decision, only reserving the right to review and reverse in cases of plain error, or flagrant injustice.

The rule was very satisfactorily stated by Mr. Justice McIver in the unreported case of *Gary* v. *Burnett*, 16 *S. C.* 633 : "Before this court will reverse the findings of fact by a Circuit judge, even where based upon written testimony, we must be satisfied that the clear result of undisputed testimony points manifestly to a different conclusion from that reached by the Circuit judge. Where the testimony is conflicting and the Circuit judge has, upon weighing it, reached a conclusion which can be supported by the testimony, we will not interfere, although there may be other testimony in the case pointing to a different conclusion. We are not to substitute our judgment for that of the Circuit judge as to the comparative weight of the testimony. It is only where there is no testimony to support his conclusion, or where manifest error is shown, that this court will undertake to overrule a finding of fact by a Circuit judge."

I have carefully read the testimony in this case, and can not say that there is no testimony to support the conclusion of fact reached by the judge. On the contrary, I think his conclusion may very well be supported by a review of all the testimony. I agree with him that the testimony did not make out an express agreement that the accounts and the deposits should be set off, one against the other *pro tanto*. Even the plaintiff himself, in his testimony, used no expression stronger than "understanding," which is a vague term, and does not necessarily mean a distinct contract between parties. It seems to me probable that all the parties took it for granted that such would be the result. Evans certainly did when he deferred a settlement on the ground, " that the firm would owe him a balance on settlement," but as Asa L. Evans was not then known to be insolvent, they did not think it necessary that there should be an express contract on the subject. It is true that Durham & Co. contracted no liability in terms with the estate of Gibson, but they did to Asa L. Evans, with the knowledge that the money he deposited belonged to that estate, and their liability to the estate was the incident and legal result of that transaction.

The facts being considered settled, as found by the judge, it does not seem to me that there was error in the law as held by him. The general rule undoubtedly is, that a mistake in law

furnishes no ground for relief, as all persons must be presumed to know the law. It is not necessary to go into the vexed question, whether the court will undertake, in a certain class of cases, to grant relief for a mistake as distinguished from mere ignorance of the law. I cannot distinguish this case from that of *Keitt* v. *Andrews,* 4 *Rich. Eq.* 349, cited by the Circuit judge. In that case the parties had agreed upon the settlement of an estate and had actually settled upon the basis of an erroneous construction of a will. Upon bill filed to correct the settlement, confessedly erroneous, the court refused relief, and I do not think it necessary in this case to say more than to cite and adopt what was said by Chancellor Dargan, in pronouncing what was made the unanimous judgment of the old Court of Appeals in Equity :

"Is there any authority which goes so far as to say that a party is entitled to relief from a mistake of law when there is no fraud, misrepresentation, management or undue influence, and where the mistake was simply his own erroneous construction of a will or deed ? In this case the parties seeking relief had the will before them. They were familiar with its provisions. The defendant did not seek, in any way, to impose their construction of it upon the complainant. It does not appear that they expressed any opinion as to its proper construction. * * * Where one interested in a will undertakes to construe it for himself, and construes it erroneously, or adopts the erroneous construction of another, and predicates a settlement and discharge on such construction, he is not entitled to open the settlement in consequence of such errors. He must abide the consequences of his misconstruction, provided of course there is no fraud, management or undue influence employed to inveigle him into the settlement. The case is not materially altered where both parties have fallen into the same error. A misconstruction, like that made out in this case, is rather an error of the judgment, than a mistake either of the law or of fact. The simple misconstruction of a will or deed, where there is no fraud or circumvention, cannot be regarded in any point of view as coming within the scope and authority of those cases where mistakes of

law, in contradistinction to ignorance of law, have been considered as affording grounds for relief," &c.

In this case McLucas certainly agreed to pay all the liabilities of the concern. Whether the claim of the Gibson estate was one of these liabilities was a pure question of law, as to which the parties assumed to act on their own judgment. If they had taken advice they might have been correctly informed. It seems to me only another form of stating the same proposition to say, that the parties understood, as a matter of fact, that there was only due $700 on the deposits of Asa L. Evans. In the case of *Cuningham* v. *Cuningham,* [next succeeding this,] this court refused to reform a deed of land which was clearly executed under a mistake as to the proper construction of a will. The difference between ignorance and mistake of law seems to me to be very shadowy, and I find that if the court undertakes to give relief in cases of alleged mistake of law, made by parties relying on their own judgment, the result will be to introduce great confusion and uncertainty as to the rights of parties. I think the judgment below should be affirmed.*

Judgment reversed.

A petition was filed for the rehearing of this case. By order dated May 30th, 1884, this petition was refused.

---

* This completes the cases heard at April Term, 1883.—REPORTER.